such an attack. Edelstein avails himself of the provisions of the Code found at Sections 11631 and 11635, which make it possible under proper conditions to vacate or modify a judgment or order after term.

In considering the question we are deciding, we have examined the decisions presented by counsel representing the petition to vacate, but feel constrained to follow the authorities which we have quoted.

The motion is sustained.

Court of Common Pleas of Morgan County.

IN RE APPLICATION FOR REMOVAL OF KERE BROCK AS GUARDIAN OF THE PERSON AND ESTATE OF WILLIAM D. BROCK, AN INCOMPETENT.

Decided January 14, 1930.

DYE, J.

This cause comes into this court on appeal from the Probate Court of Morgan county, Ohio.

Kere Brock was appointed guardian of William D. Brock, an incompetent, by the Probate Court of Morgan county, on the 23d day of May, 1922.

William D. Brock is an honorably discharged soldier of the World War. Kere Brock is the mother of said William D. Brock.

It appears from the record that the only estate belonging to this ward and for which the guardian has to account, is that which originated in and is derived from a pension from the United States Government growing out of injuries which he received in the service.

The ward's estate being thus derived solely from the United States Government as donor, the United States Veterans' Bureau, under the World War Veteran's Act, Section 21 (2), became and is an interested party in matters relating to the control and supervision of such estate or fund.

By virtue of such authority, W. L. Metzger, who, it appears, is the duly authorized Regional Attorney, of the United States Veterans' Bureau, and of Hon. Frank T. Hines, Director of the United States Veterans' Bureau, on the 14th day of May, 1929, filed with said Probate Court, exceptions to the third partial account of said guardian, which account was filed on October 3d, 1927.

Said account was excepted to on six several grounds. The sixth exception to said account does not appear at this time to be prominently stressed.

The first to the fifth grounds of the exceptions, inclusive, are for reasons that the several receipts or vouchers, evidencing the several alleged payments or expenditures, were all and severally raised and changed or altered by said guardian and are, therefore, incorrect.

The exceptor objects and excepts to all and each of said several credits claimed by the guardian in said account; to the altering and changing of said several receipts or vouchers so filed as proof of payments by said guardian; and asks that said guardian be compelled to show cause why said items should not be disallowed in the account and further that said guardian show cause why she should not be removed.

After several continuances, said exceptions finally came on for hearing and were duly heard by the Hon. Arthur Torbert, Probate Judge, on July 24, 1929, resulting in a finding by the court that the first, second, third, fourth and sixth exceptions should be overruled and that the fifth exception should be sustained, ordering the guardian's removal and that she pay to the ward's estate $176.26.

Thereafter, on a further hearing, on July 29, 1929, the said fifth exception was overruled, but the court ordered said guardian removed on the grounds of incompetency and neglect of duty.

The Probate Court in its final entry, among other things, found and determined, in substance,

"That the said partial account of Kere Brock is not in the form required by law, in that the nature of the expenditures shown thereon have not been satisfactorily stated; * * * that the said guardian filed, as proof of payments, with said account certain altered or defaced vouchers, which vouchers were for sums of money in different amounts than receipted for by persons who tendered such vouchers; * * * that the filing of said altered vouchers * * * constitutes neglect of duties and incompetency; * * * that the said guardian has not performed the duties incumbent upon her, as prescribed by law as ordered by this court and as directed by the United States Veterans' Bureau; that the first, second, third, fourth, fifth and sixth exceptions, although well taken, should be overruled, in that it has been shown * * * upon the evidence, that the said guardian in truth and fact expended funds of said ward equal to the sums shown as having been so paid, according to the vouchers submitted."

The court then ordered the guardian to be removed, on the grounds of neglect of duty, incompetency, failure to comply with the orders of court and neglect to comply with the instructions of the United States Government as donor of funds comprising the ward's estate.

From this decision and order of the Probate Court, an appeal was duly taken to the Court of Common Pleas and the cause so appealed was tried and heard in said Court of Common Pleas on December 10, 1929, in the same manner as though the court of common pleas had original

jurisdiction thereof; the Common Pleas Judge of Noble county sitting in place of Judge H. M. Finley, under assignment of the Chief Justice.

The evidence in this case on the part of the Veterans' Bureau as well as the evidence on the part of the guardian, was principally confined to evidence reflecting upon the receipts or vouchers mentioned and referred to in exceptions one to five inclusive.

Without going into any extended review of the evidence relating to these receipts, I believe all must agree with the possible exception of the Deedrick receipt, that all of these receipts, were materially changed or altered after they were signed by the several creditors to whom such payments were made.

Judge Lyne, who prepared the account, testified, in substance, that he recalled the fact that while he was preparing the account, the Deedrick receipt was sent back to Mr. Deedrick so that another and proper voucher could be executed. That while he did not see Mr. Deedrick make the change in the original receipt, he believed from all the facts and circumstances that Mr. Deedrick made the alteration in the receipt and that it was brought back to him (Lyne) in the same condition as it now appears and was thus filed as a voucher—Judge Lyne remembers of complaining about having to file a receipt in such shape as this one was.

As I now recall his testimony, Judge Lyne has no distinct recollection about the other receipts or any alterations or changes being made in them before filing.

The only reasonable conclusion which we can reach from Judge Lyne's testimony is, that the other receipts while in his hands, were in the ordinary form, corresponding to the amounts set out in the account. Had they appeared then as they now appear, in all probability he would have refused to file them as vouchers. We are sure that Judge Lyne made no changes in any receipt after it was signed and had he noticed the irregularities that now appear, we must presume he would not have knowingly allowed them to be filed.

As shown by the evidence and all the facts and circumstances, I believe that these receipts, with the exception of the Deedrick receipt, the change in which is satisfactorily explained by Judge Lyne, were all in proper form for filing at the time the account was prepared by Judge Lyne.

From the testimony of these several business men who signed the receipts, the testimony of Judge Lyne, who prepared the account, and the testimony of Kere Brock, guardian, I am led to believe and do believe that the receipts or vouchers mentioned in the first, second, fourth and fifth exceptions to said account, were materially raised, changed or altered without the knowledge of her attorney, Judge Lyne; that they were so materially raised, changed or altered either immediately before said account was filed with the Probate Judge or after said account was so filed and that any and all such changes or alterations in said receipts were made without the knowledge, permission, acquiescence or approval of said Probate Judge.

From all of the facts, circumstances and evidence in the case reflecting upon such changes or alterations in the receipts, I can only reasonably conclude that such changes or alterations were made solely by said Kere Brock or at her instance and direction, and further that such alterations and changes were made for some wrongful purpose. Under the evidence, the purpose in altering the receipts may not be clear, but it does clearly appear from the evidence that whatever the purpose may have been, it was not an open, clear and upright purpose.

While it is said that no one was injured because the evidence shows that the guardian did actually expend for the benefit of her ward's estate the several amounts of money which the altered receipts call for, yet, this fact does not make the wrong right.

When the Probate Court found, and as I believe rightfully found, that this guardian "filed, as proof of payments, with said account, certain altered or defaced vouchers which vouchers were for sums of money in different

amounts than receipted for by persons who tendered such vouchers to said guardian in proof of payment of articles purchased out of the funds in the estate of said ward," then, such finding constituted ample grounds for her removal.

Aside from the grounds for removal mentioned in the Probate Court's order, under date of September 11, 1929, I am satisfied that there appeared to the Probate Court other and equally valid reasons for removal which are not shown by the court's entry.

The grounds mentioned are amply sufficient and amply justified by the evidence, but it is equally clear that this guardian had made herself obnoxious to the court and to the government officials who were rightfully looking after the funds going into her hands, by her recalcitrant and refractory conduct and demeanor toward the court and government officials.

It must be remembered that the funds which this guardian must handle are funds derived from the government, and under the World's War Veteran's Act the Veteran's Bureau is vested with authority to appear in court and make due presentation of such matters in relation to such funds as it deems just and to the best interest of the beneficiary.

Such bureau is directly interested in the supervision of the estate and this necessarily carries with it an interest in the choice of the person who is to handle the funds as guardian or trustee.

Under the Worlds War Act the government has a right to exercise some supervision over the funds and the fidiciary handling the funds and to annex conditions in relation to such matters, and the director may, in his discretion, suspend payments to the guardian as has been done in this case.

It is, therefore, highly important, and in fact common courtesy, expediency and a sense of justice and right demand that the person entrusted with such funds be a person in whom the donor of the funds may have implicit confidence and utmost faith, belief and reliance.

Such a one is not hard to find. The World War Veteran's Act, the laws of the state of Ohio and the requirements of the Probate Court, only demand that he be possessed of those common traits of character as insure a fair, honest and faithful discharge of duties in a courteous and respectful manner.

Disrespect of law and for the court are outstanding traits of unfitness in any officer of the court.

In the instant case the disrespect and incivility shown by Mrs. Brock to Judge Mercer, as displayed in her letter to Mr. Metzger, under date of November 28, 1929, the malicious, venomous and spiteful sentiments therein expressed can only shock the sensibilities and wound the heart of any one possessing any degree of respect or esteem for those holding judicial positions.

The fact that Judge Mercer at the time the letter was written, was not then Probate Judge, detracts not the least from its importance in displaying the attitude of Mrs. Brock toward the court and her unfitness to hold any position of trust under a court.

Had this letter not have been introduced, I would, under the law and the evidence, have sustained the Probate Court in its order of removal.

On the other hand, it appears to me that this letter, standing alone, is so indicative of her character and of her attitude toward the court, as to warrant her removal as unfit for such a position of trust.

Her attitude toward Judge Mercer indicates what it would be toward any court that would attempt to control her actions and conduct.

I believe that the best interest of this ward and all persons in interest, demand that the decision of the Probate Court be affirmed.